# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

WILLIAM JACKSON,

    Plaintiff,

v.

JACK N. ACKERMAN,

    Defendant.

No. 08 CV 273
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In January 2008, Plaintiff William Jackson ("Jackson") filed a complaint against Defendant Jack Ackerman ("Ackerman") alleging default under a loan agreement. Jackson now moves for summary judgment, seeking relief in the amount of $500,000. For the following reasons, Jackson's motion is denied.

### II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir.2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations,

unsupported by specific facts" in order to establish a genuine issue of material fact." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III. STATEMENT OF RELEVANT FACTS

Plaintiff Jackson and Defendant Ackerman are both one-third owners of Medinah Partners, LLC. In April 2004, Jackson loaned Ackerman $500,000 and the two executed a promissory note ("Note") in that amount. On the same day, Ackerman also executed and delivered to Jackson a loan agreement ("Agreement") whereby Ackerman pledged his equity interest in Medinah Parnters, LLC. The Agreement requires that Ackerman, by May 31st of each calendar year, provide to Jackson a copy of his filed tax return. The Agreement also requires Ackerman to notify Jackson in writing of any realized capital gains, including gain on assets held in joint tenancy or tenancy in the entirety by Ackerman and his spouse, within three days of the sale of any such capital gain. Further, the Agreement requires that Ackerman maintain a life insurance policy for at least $500,000 until the principal and accrued interest on the loan are paid in full, and that the policy be assigned to Jackson as security for the loan. Under the Note, an event of default includes any default under the loan agreement.

On January 11, 2008, Jackson filed a complaint against Ackerman alleging default under the pledge agreement. In his complaint, Jackson alleges two grounds for default: (1) Ackerman failed to provide his 2005 and 2006 filed tax returns, and (2) Ackerman failed to notify Jackson of the sale of his principal residence, in violation of the capital gains clause.

On June 23, 2008, the Sun Life Assurance Company of Canada notified Jackson that the policy Ackerman purchased as security for the loan had lapsed due to non-payment of the May

2008 premium. According to Ackerman, he had maintained other policies in replacement of this policy, thereby satisfying the requirement in the Agreement.

On July 21, 2008, Jackson gave notice to Ackerman of Ackerman's default and demanded payment of the entire indebtedness. On August 5, 2008, Jackson gave notice to Ackerman of his election to retain Ackerman's interest in Medinah Partners, LLC, the collateral identified in the Agreement.

Ackerman states that at all relevant times, the monthly interest payments required of him under the Agreement were paid by William Russell, President and one-third owner of Medinah Management Corporation (manager of Medinah Partners, LLC) from Ackerman's monthly distribution from Medinah Partners. Ackerman has provided an e-mail demonstrating Jackson's attorney's awareness of the distribution arrangement. According to Jackson, Ackerman failed to make the $4000 interest payment on the note for the months of August and September, a claim which Ackerman denies. On September 2, 2008, Jackson wrote a letter to Russell alerting him of Ackerman's default on the loan as a result of Ackerman's alleged failure to (1) provide his 2005 and 2006 tax returns, (2) notify Jackson of the sale of his home, and (3) maintain his Sun Life Assurance Company policy. The letter then directed a transfer of Ackerman's voting rights to Jackson. The letter made no mention of unmade interest payments.

Jackson now moves for summary judgment on the basis of the lapsed insurance policy and missed interest payments.

**IV. DISCUSSION**

Plaintiff Jackson's summary judgment motion is based on the assertions that (1) Ackerman allowed his life insurance policy to lapse, an event of default under the Agreement;

3

and (2) that Ackerman missed the August and September 2008 interest payments. Defendant Ackerman argues first that because Jackson failed to allege these bases for summary judgment in his complaint, his motion should be denied. Next, Ackerman claims that he has at all times maintained life insurance pursuant to the Agreement. Finally, Ackerman maintains that any failure to make monthly interest payments occurred without his fault or knowledge.

Ackerman first argues that Jackson's complaint fails to allege the purported events of default upon which Jackson has based his motion for summary judgment. Jackson's complaint alleges two grounds for default: (1) Ackerman failed to provide his filed 2005 and 2006 tax returns, and (2) Ackerman failed to notify Jackson of the sale of his home in violation of the capital gains clause. In his motion for summary judgment, however, Jackson seeks judgment on the allegations that Ackerman (1) allowed his life insurance policy to lapse, in violation of the Agreement, and (2) missed interest payments for the months of August and September, 2008. Federal Rule of Civil Procedure 56(a) states that "[a] party claiming relief may move. . . for summary judgment on all or part of the claim." In this instance, the bases for relief stated by Jackson are not part of the claim. In this circuit, Jackson may not amend his complaint through arguments in his motion for summary judgment. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (complaint may not be amended by the briefs in opposition to a motion to dismiss).

Ackerman has had neither the opportunity to answer the allegations, nor to take discovery with respect to these allegations, and Jackson's own litigation tactics reveal that further discovery

4

is required before a motion for summary judgment may be granted. Ackerman claims that he has, at all times, maintained life insurance pursuant to the agreement. Although Ackerman admits that the Sun Life Insurance Policy lapsed in May 2008, in his affidavit he explains that this policy was replaced by another policy held with Banner Life Insurance Company, to which Jackson was added as a beneficiary in October 2006. He further states that the Banner policy was then replaced by a policy issued by Prudential Financial on July 1, 2008, which also lists Jackson as a beneficiary. Ackerman has included the beneficiary change confirmation from Banner, adding Jackson as a beneficiary, as well as the contract data form (including beneficiary information) from Prudential.

On October 9, 2008, upon receipt of Ackerman's response to his motion for summary judgment, Jackson served Ackerman with a supplemental document request, asking him to produce the Banner and Prudential policies, "including all applications for the same and any correspondence or notices relating to said policies." In response, Ackerman, subject to objection, provided the same beneficiary change confirmation letter and contract data form filed with his opposing motion. Jackson's document request is itself an acknowledgment that additional discovery is required before Jackson can seek summary judgment on the basis of the lapsed insurance policy.

Finally, Ackerman maintains that any failure to make monthly interest payments occurred without his fault or knowledge. In his affidavit, Ackerman explains that the monthly interest payments he is obligated to make under the Agreement were paid by arrangement by William Russell, President of Medinah, from Ackerman's monthly distribution. Ackerman asserts that at no time was this arrangement terminated, nor has he ever been informed that the payments were

5

no longer being made on his behalf.

Ackerman states that he first learned of the unmade payments in Jackson's October 1, 2008 motion for summary judgment. Since Jackson failed to allege this basis for summary judgment in his complaint, or to amend his complaint to include it, Ackerman has not had the opportunity to take discovery as to this matter. Accompanying his reply, Jackson has included an affidavit from Mr. Russell, attesting that he did in fact notify Ackerman in September of 2008 that owner distributions would be suspended. However, the dueling affidavits demonstrate that there is, indeed, an issue of material fact as to whether the payments were made at all, and, if not, the reason for their suspension.[1]

## V. CONCLUSION

For the foregoing reasons, I deny Plaintiff's motion for summary judgment.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 28, 2009

---

[1] Jackson maintains that Ackerman's payment arrangement with Russell is irrelevant. However, in his response, Ackerman speculates that Jackson, through his attorney, may have created the default for which he now seeks summary judgment. Ackerman suggests that Russell may have terminated the distributions to Jackson based on the September 2, 2008 letter from Jackson to Russell declaring an event of default and demanding the transfer of Ackerman's voting rights to Jackson. Although Russell's affidavit seems to rebut this theory, it is inappropriate to rule on the matter when Ackerman has not had the opportunity to investigate the issue.